And our next case this morning is Harlan Ten Pas v. Lincoln National Life. All right and I see Ms. Herring and Ms. Tristano. So we're ready to begin. You may proceed Ms. Herring. Good morning. May it please the court. Jackie Herring on behalf of the Lincoln National Life Insurance Company. This case involves a claim for payment of disability benefits under an ERISA plan. But unlike most disability cases in this case there is no dispute that Mr. Ten Pas is disabled. And there is no dispute that he became unable to work on Sunday August 31st when he had a heart attack, required emergency hospitalization and surgery, subsequently suffered two strokes, and was in the hospital for at least a portion of every day for the following two weeks followed by more than a month of inpatient rehabilitation. The only question is the amount of the benefit that is payable. And the group policy provides the answer to that question. The policy specifies that the benefit is calculated based on the defined term in the group policy that's defined as the last day worked just prior to the date the disability begins. Mr. Ten Pas' disability began on Sunday August 31st and therefore Lincoln National reasonably calculated his benefit based on his August salary which was $25,000. Mr. Ten Pas disputed that calculation and wanted to include a salary increase up to $30,000 that was set to take place after his disability on September 1st. He wanted to create the fiction that through the policy's active work provision he could never be disabled on a weekend or on a holiday under any circumstances regardless of the medical facts because he remained in active work status. The district court erred in misconstruing the active work disability and determination dates as those terms are defined in the group policy and in adopting Mr. Ten Pas' interpretation. I have a question about when that definition of active work or actively at work was injected into the dispute and it looks like from what I can tell that the original benefits determination didn't look to that definition because it really doesn't have anything to do with either determining when a disability begins or determining the amount of a benefit. That determination date term that you just referred to. It has to do with an entirely separate question about continuation of coverage and whether an employee is covered or not after some sort of interruption in coverage as I understand the policy. But it looks like that active work or actively at work definition, those two interchangeable terms, was injected into the dispute at the appeal stage, the administrative appeal stage. Am I reading this record correctly? Yes, you are, Your Honor. You're reading the entire thing correctly. The active work dispute was injected by Mr. Ten Pas in an effort to try to extend his coverage and increase his monthly benefit to include a salary increase that was after his date of disability. It was not part of the determination because actively at work functions exactly as Your Honor just pointed out. It is something that determines either when an employee becomes eligible for coverage, when an increase in coverage can take effect, or it also helps to when an employee is absent from work, whether that absence is due to a holiday, a weekend, a non-workday. Any non-workday active work continues coverage throughout that period. So there's not a constant interruption in coverage every time someone goes home for the weekend. They're still covered. And they're covered because they're deemed to be actively at work unless they are disabled. And that's the part that the district court and Mr. Ten Pas got backwards. Active work status isn't a shield that prevents an employee from becoming disabled. It's exactly the opposite. Becoming disabled removes somebody from active work status. And so as soon as Mr. Ten Pas became disabled on Sunday, August 31st, he was no longer in active work status. Ms. Herring, you ground that argument, do you not? This point wasn't clear from the briefs, but I think it's implicit. You ground that in the unless clause within the active work section of the policy, correct? Primarily, yes, Your Honor. It specifically states unless disabled on the prior workday or on the day of absence. It also goes on, when you're looking at the dates in which an employee is considered actively at work, it excludes disability-related absences. For example, number three specifically refers to a non-medical leave of absence. So it's not intended to cover a disability-related absence. Same thing, it includes approved medical leaves for family members, FMLA-type leaves, but not for the employee's own disability. So it's never, active work is never intended to continue coverage. Well, it's not intended to prevent a participant from becoming disabled when they are absent from work on these vacations, holidays, et cetera. The active work clause continues coverage when a participant is absent from work, but active work does not prevent a disability from occurring while that participant is absent from work. And the district court held exactly the opposite. And there's no dispute here that Mr. Tenpas was covered. He has coverage. He's eligible. He has coverage. There was no break in coverage at the time that he was stricken with the heart attack on Sunday the 31st. And so there's just no eligibility or a question of the existence of coverage that's in dispute here. The question is only what the amount of the benefit is. And that's key to this determination date concept, which is key to the onset of the disability. So yes, yes, and yes. It's all of those things. Mr. Tenpas, in fact, was paid benefits through the maximum benefit period. There was no question that he absolutely had coverage at the time of that heart attack. His claim was promptly approved. And the dispute arose because naturally he wanted a higher benefit amount. But the way that the determination date and the policy generally is structured, a determination date, the amount of your benefit is based on the salary that you had before you became disabled. The determination date must always be before disability and can never be after disability. It's based on the salary on the last day worked just prior to the date disability begins. For Mr. Tenpas, that was in August 2014. And Lincoln National appropriately used his $25,000 salary to calculate his benefit. That decision is, it's reasonable, it's rational, it's supported by substantial medical evidence in the record, and it should have been affirmed under ERISA's arbitrary and capricious standard of judicial review. And the district court erred by holding otherwise, and that decision should be reversed and judgment entered in favor of Lincoln National. Can I ask you a question about the arbitrary? I'm sorry, Judge Sykes, go ahead. Well, I just had a question about why the claims adjusters that handled the two administrative appeals made reference to this active work and actively at work set of definitions and used that terminology. Was it just to address the arguments that were being raised by Mr. Tenpas' counsel? Yes, that was the primary reason to address the concept of whether Mr. Tenpas stayed within active work. The appeal letters were explicitly stating, hey, when you became disabled, you were no longer in active work. So they were addressing his argument that his active work status continued. So they were expressly addressing that. The question I have for you is, I know this is counterfactual, and I'm asking you about the work that the arbitrary and capricious standard is doing on review here on this fact pattern. Because it seemed to me when I read the briefs, you can tell me it's a mistaken view, that Lincoln quite easily could have determined the disability date to have been September 2nd. Now I know it did not. I'm well aware of what happened. But it seems like it could have looked at this and said, you know, the heart attack was unfortunate, he was treated, he was released, he tried to go back to work, he gave it a shot on September 3rd, and unfortunately, experienced the stroke. And we know what happened from there. And that Lincoln could have looked at these exact same facts and said, totally disabled, probably September 2nd, heart condition, to be sure, on August 31st. If your client had done that, would you argue that it's reasonable? I think I'd be in trouble in front of this court arguing that that was on Monday, September 1st. So I think it's a little difficult to say that he was capable of working and that he was not unable to perform his main duties. He's undergoing heart surgery. He went to the office on September 3rd, right? So he attempted to go for a portion of time on Wednesday, that is correct. Yeah, and he was there for four hours. So if Lincoln, counterfactually, had determined, he gave it a shot on the 3rd, the disability sets in the day before, it's a working day, Tuesday, September 2nd. Is that reasonable enough to satisfy Arbitrary and Capricious Review, or would it be? Under the facts that we have here, I don't think that it would be. And there's a couple reasons for that. The primary ones being there's an entire history and body of case law that even if a participant strains to go back to work, does everything that they possibly can. I mean, this guy had to leave because he was having a stroke that had started days earlier. And if ERISA administrators were to say that because somebody is able to drag into the office for a couple hours and send a few emails from the hospital, they're capable of performing the main duties of a tax attorney, I think that would run afoul of the pretty consistent case law that says the workability has to be more than de minimis. And it's certainly reasonable to say that at the time he had his heart attack and he was hospitalized, undergoing heart surgery, that at that point he was not able to perform the main duties of his job as a tax attorney. I reserve the remainder for rebuttal. Thank you. Thank you. Ms. Tristano. Ms. Tristano, you're still muted. Thank you, Judge. Good morning, and may it please the court. Marley Rose Tristano on behalf of the plaintiff appellee, Harlan Tenfas. This case is really a question of whether or not Lincoln National, who is the insurer, the administrator, and the fiduciary of the group policy, should be held to the plain language that they wrote. The construction of an insurance policy is a question of law. There is no disagreement to the timeline of events in the case or that Harlan Tenfas had a finding of disability. However, contrary to Lincoln National's argument, the date of disability is in contention. What is key is the language found in the policy. U.S. Airways is very clear. We hold the plan in short at the center of ERISA. The policy language says, unless disabled on the prior workday, a Saturday, Sunday, or holiday that is not a scheduled workday, he is considered actively at work. That terminology has no work to do here. That definition of active work or actively at work has to do with whether coverage is intact, and there's no dispute that coverage was intact. So, that whole issue of active work, actively at work, and the definition of that term and the definition section of the policy just isn't in play here. What is determinative is the definition of determination date, because that's the key to the calculation of the amount of the benefit. Judge, I would respectfully disagree in two ways. The first being that if it was meant to only be an umbrella coverage term or term for coverage, it could have explicitly said that. Well, let me stop you right there. The only place that those terms, active work and actively at work appear are in the eligibility section of the policy and the effective date section of the policy. They don't appear anywhere else in the policy, and in particular, they do not appear in the sections of the policy that pertain to either disability onset or definition of disability or the amount of the benefit. Those terms just don't appear in the operative sections of the policy that are at issue here. So, that whole argument about whether he was in active work status or actively at work is just a complete red herring in this case. We ought to focus on the terms that actually are decisive here, and that's the determination date definition and the definition of total disability. Your Honor, I do not believe that there's a disagreement as to there being total disability, but I would draw attention that in the definition of determination date within the policy, it does reference the last day work just prior to the date the disability began. Nowhere else in the policy is there a reference to what is considered last day worked. So, there is an argument to say that actively at work is the only definition within the policy that gives the reasonable reader the opportunity to define last day work just prior to the date the disability began. It's a different term. It's a very like term, and the reason I say it's a very like term. At work, our terms of art is used in this insurance policy, and they appear nowhere in the definition of determination date. Then, Your Honor, we would... Import them into that definition would be to misread the policy. So, if you would work with me on that premise and make your best argument apart from the definition of active work or actively at work. Then, the premise that we would move to would be, is the date of disability actually August 31st of 2014? Harlan did suffer a heart attack or a minor heart attack, and then on September 1st, 2014, had a drug-eluting stent placed into his chest. Yes, he was in the intensive care unit. However, he was the only resident in the intensive care unit in the Oconomowoc Wisconsin Hospital over Labor Day weekend. So, where he was placed in the hospital is not necessarily determinative of the severity of the heart attack or the mitochondrial infraction. Harlan continued to work while in the hospital. I do not think it's outrageous to say that a tax partner continues to work remotely. For instance, the standard work week, as defined by the employer, is a 40-hour work week, eight hours a day. So, that would dissuade Mr. Tenpas from ever working on a Saturday or Sunday. Yet, it is clear he was working at the office on Saturday, August 29th. He was working at August 30th. He was working at the office Sunday, August 31st. He went into the hospital in the evening, had the surgery the next day. So, the heart attack was not as severe as to need immediate surgery, and then communicated with his office the same day after the placement of the drug-eluting stent that he reasonably believed he was as healthy as a 40-year-old, and that he would be back to work, and he would not be back to work, but would stay at home to get used to the medications, so long as his wife didn't drive him crazy. There was nothing from that email or his actions that would say that he was disabled right after the heart attack. In fact, he continued to stay at home. Well, Donald, the question is not what he reasonably believed, but what the claims adjuster ruled, and whether that ruling on the claim was arbitrary and capricious.  About the initial determination by the insurance company that the claimant was totally disabled effective August 31st, because as of that date and thereafter, he was unable to perform all of the main duties of his job as a tax attorney. What was arbitrary or capricious about that determination? That determination was arbitrary and capricious because none of the medical evidence that was presented to the claim adjuster or taken by Lincoln National says that he was disabled as of August 31st, 2014. In fact, all of the medical reports say that the actual disability did not take place until the second stroke, which happened the following Saturday when he was brought into the Highland Park Hospital. In addition, the claims adjusters continued to move the goalposts. Initially, the claims adjusters, before the appeal, which was one of the questions previously asked, did start a discussion regarding the actively at work terms because his date of determination or last active date worked as September 5th and then made his date of disability the following Monday. It wasn't until the claims adjuster was notified from the employer about the salary increase that there began to be an issue regarding the date of disability. All of that happened in the initial investigation, not in any of the appeals process. Mr. Tristano, a question concerning this time frame directly after August 31st while Mr. Tenpass is in the hospital. He's working for a, it's a large accounting firm, correct? Yes, Judge. He's a lawyer. The interaction that he had, at least one of the emails, was with regard to a tax return and a problem that a client had with it and then him indicating that that would be addressed. Is that correct? Yes, Judge. Is the nature of his work, whether it be that week or subsequent weeks or prior to that, does the record reveal, does he bill hours similar to an attorney would? Does he have an hourly rate? What's the nature of how his time is calculated and then billed? Yes, Judge. So it would be more to think of him as a managerial position, that at the time he actually had anywhere up to 50 different accountants underneath him. And as he was a lead tax partner, it would be less that he acted in the role of an attorney or an accountant and more as a case manager. So making sure that the clients that brought in the largest amount of money to the firm remained happy, to make sure that the accountants working underneath him were meeting their deadlines. If you notice by the date that all this occurred, we were very close to the September 15th date, which is the end of the third quarter where many returns have to be filed, as well as the extension date for corporate tax returns. So at that, would he be the one doing the actual returns? No. He's managing the different accountants that are handling the different cases and he acts as the face for the different accounts. Now as to his billing or how his billing would happen during that period of the year, it wouldn't be an entry into the time system that I'm working for company A or B for 0.2 hours charging a $300 an hour rate. It would be I'm communicating with the clients to make sure that the clients are satisfied. I'm communicating with my accountants underneath me during this very strenuous time of year where people's vacations and everything's being changed because we're nearing the September 15th deadline and making sure my employees stay happy. His job is not to do the nuts and bolts. As a lead tax partner, his job is to work up business, to keep things moving, to make sure the clients stay happy, to make sure that the employees under the stress that they're under stay happy. And he continued to do that every single day until his stroke, which left him paralyzed on the right side and aphasia. I believe this court in conducting the review has to remain cognizant as well of the conflict of interest that exists when the administrator has both the discretionary authority to determine the eligibility of benefits and to pay the benefits when due. When we analyze such a case, the standard of a review may remain arbitrary and capricious, but there can be less deference. The court has held that over and over again in determining whether there was an abuse of discretion and that if there is any remaining issue, that that conflict of interest actually acts as a tiebreaker in favor of the insured. The appellant argued that there was not enough evidence presented to support Harlan Tenpas' claim of any disability date after August 31st, 2014. However, that is simply not true. The administrative record, the joint statement of undisputed facts that was submitted to the court, and the entire administrative record, which is contained in that undisputed statement of facts, which is entry 48 in the record, does actually show lots of other evidence. For instance, the claim adjuster specifically asking the employer, well, are there any emails to prove that he was working, and emails are produced. And then the company saying, well, just producing emails isn't enough. Sworn affidavits from other lead partners in the firm are included in the bouts of evidence that said Mr. Tenpas continued to work until his second stroke. All of those items were included with the administrative review process and simply ignored. What is hounded on is a mistake by the treating physician at Shirley Ryan, which Mr. Tenpas did not start, was not admitted into until September 12th when he was released from the Highland Park Hospital, that initially said that the onset of issues was the August 31st, 2014 date. That physician, who had not treated Mr. Tenpas prior to that date, went ahead and corrected her statement, initialed the same, and offered an explanation why it was actually not until the second stroke that he was unable to perform all the main duties of his occupation. The other argument that is continued is that Mr. Tenpas had to perform each and every duty of his main occupation all simultaneously at the same time. We all have work functions that have a list of duties. We don't necessarily provide every duty and participate in every duty of our work function. It depends on the time of year, the time of day, the client we're handling, etc. The final determination letter said that he was actively at work until August 31st. However, it does not explain why he was not actively at work later. Harlan praised this court, affirmed the decision of the district court in its totality. We thank the court for its time and consideration, and we rest on our briefs. All right. Thank you very much, Ms. Herring. Ms. Herring, you're still on mute. Got it. There we go. Thank you, Your Honor. The only argument that Mr. Tenpas raised in the district court was the active work argument. It did not present argument to the district court that he became disabled on a date other than August 31st. Even in the briefs on appeal, he specifically stated there is no dispute on that date. And if an ERISA administrator were arguing to this court that a tax attorney's ability to send an email from the hospital simply to let his team know, I'm going to be out for a few days, and to forward another problem for somebody else to handle because he was in the hospital and unable to handle the work himself, the court would have no trouble finding that that would be an unreasonable position. And that position doesn't become any more reasonable simply because it's being made by Mr. Tenpas himself. The decision that Lincoln National made in this case is imminently reasonable to find that the man became disabled on Sunday, August 31st, when he suffered a heart attack, had to be hospitalized immediately, had surgery the following day, was followed by a stroke. He was in the hospital every day for the next two weeks. It is not unreasonable for Lincoln National to determine that he became disabled on August 31st. That court's decision should be reversed and judgment should be entered in favor of Lincoln National. Thank you. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.